UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CARLOS ABREU,

                              Plaintiff,

            v.                                   9:15-CV-0540
                                               (MAD/ATB)

TRAVERS, et al.,

                              Defendants.
_____

APPEARANCES:

CARLOS ABREU
99-A-3027
Plaintiff, pro se
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12582

MAE A. D'AGOSTINO
United States District Judge

## DECISION and ORDER

## I.    INTRODUCTION

      Presently before the Court for review is a complaint submitted for filing by pro se

plaintiff Carlos Abreu pursuant to 42 U.S.C. § 1983 ("Section 1983").[1]  Dkt. No. 1 ("Compl.").

Plaintiff, who is presently incarcerated at Green Haven Correctional Facility, has paid the

filing fee required for this action.

## II.    RELEVANT BACKGROUND

      This action was originally commenced by plaintiff and fifteen other inmates in October,

---

[1] Plaintiff has three other civil actions pending in this District.  *See Abreu v. Kooi*, No. 9:14-CV-1529 (GLS/RFT); *Abreu v. Miller*, No. 9:15-CV-1306 (TJM/DJS); and *Abreu v. Lipka*, No. 9:16-CV-0776 (LEK/DEP).

2012, against more than seventy defendants.  *See Weathers, et al. v. Travers, et al.*, No. 9:12-CV-1582 (GLS/RFT) ("*Weathers*").  Plaintiff's claims were severed from the remaining plaintiffs' claims in *Weathers*, he was granted permission to file his complaint in this action, and his complaint in this action was deemed filed on October 22, 2012 - the date that the *Weathers* action was filed.  *See* Dkt. Nos. 6, 7.  The full history of *Weathers* is set forth in multiple Decisions and Orders issued by then-Chief United States District Judge Gary L. Sharpe in that action and will not be repeated here unless relevant to the Court's review.  *See* Dkt. Nos. 4-7 (copies of relevant orders from *Weathers*).

## III.    DISCUSSION

The legal standard governing the dismissal of a pleading for failure to state a claim pursuant to 28 U.S.C. § 1915A(b) was discussed at length in this Court's Decision and Order filed on September 14, 2015, and it will not be restated in this Decision and Order.[2]  *See* Dkt. No. 8 (the "September 2015 Order") at 4-8.  Among other things, the September 2015 Order dismissed the Eighth Amendment medical indifference claims against defendants Travers, Marlow, and Lashway arising between February, 2012, and August, 2012, because those claims were clearly duplicative of claims asserted by plaintiff in an earlier-filed action. September 2015 Order at 9-10; *see also Abreu v. Lira*, No. 9:12-CV-1385 (NAM/DEP) ("*Abreu* I"), Dkt. No. 1.  Since those claims have been dismissed, the factual allegations supporting them will not be discussed in this Decision and Order unless necessary to clarify the remaining claims.  Travers, Marlow, and Lashway remain defendants as there are other claims asserted against them.

---

[2]  Plaintiff is not proceeding in forma pauperis therefore 28 U.S.C. § 1915(e)(2)(B) does not apply.

**A.     Summary of the Complaint**

Plaintiff asserts numerous claims that arose, if at all, while he was incarcerated at Upstate Correctional Facility ("Upstate C.F.").  Plaintiff states that all of the defendants are sued in their individual capacities.  Compl. at 8.  The Court will use its best efforts in an attempt to discern plaintiff's claims and will set forth the facts as alleged by plaintiff in his complaint.

**1.  Medical and Mental Health Treatment**

Plaintiff suffers from chronic asthma, high cholesterol, allergies, hemorrhoids, and "other medical conditions."  Compl. at 9.  Prior to arriving at Upstate C.F., plaintiff was housed at Southport Correctional Facility ("Southport C.F."), where the mental health staff determined that plaintiff suffered from "serious mental conditions/psychological traumas."  *Id.* Also while at that facility, the medical staff ordered that plaintiff be scheduled for x-rays or an MRI, that he see a specialist and an eye doctor, that he undergo a rectal examination, and receive physical therapy and "other medical attentions."  *Id.*  At either Southport C.F. or Five Points Correctional Facility, plaintiff was given an asthma inhaler, Lipitor for his high cholesterol, and allergy and pain medication.  *Id.* at 10.

On or about February 29, 2012, while waiting for medical appointments and physical therapy that had been scheduled at Southport C.F., plaintiff was transferred to Upstate C.F. Compl. at 10.  Plaintiff was regularly intimidated, retaliated against, and denied medical services by the nurses, security, and staff at Upstate C.F. because they claimed that he had stabbed two correctional officers at Five Points C.F.  *Id.* at 11.  On April 17, 2012, plaintiff filed a grievance claiming that defendants Travers and Lashway were harassing and threatening him.  *Id.* at 18-19.

3

From November, 2012 until February, 2013, at Upstate C.F., plaintiff filed nearly daily sick call requests reporting chronic pain, rectal bleeding, vision and hearing problems, and headaches, and requesting a back brace, physical therapy, a colonoscopy, various medications, and specialist appointments, but the requests were repeatedly denied or ignored.[3]  Compl. at 11-12.  Plaintiff was told by nurses that there was no real doctor at Upstate C.F. and only defendant nurse practitioner Lashway could schedule him to see a doctor.  *Id*. at 12.  Plaintiff had previously sued Lashway in 2008; the lawsuit was settled in 2010.  *Id*. at 12.  Defendant Lashway remembered plaintiff from her previous contact with him at Clinton Correctional Facility and she "mentioned" plaintiff's lawsuit and complaints against her, and asked if it was true that plaintiff settled the lawsuit against her.  *Id*. at 13.

Plaintiff advised defendants Rock, Schroyer, Kornigsmann, Grinbergs, Smith, Rabideau, and Otis that defendants Travers, Marlow, and Lashway were not addressing his medical needs, but they did not correct the problem.  Compl. at 15.  On May 10, 2012, plaintiff wrote to defendant Fischer complaining about the medical staff misconduct and also told him that he had written several times to defendants Rock, Uhler, Lira, Zernia, and Quinn about the same problems but they did not respond.  *Id*. at 25-26, 34.

On August 16, 2012, defendant Travers denied plaintiff his cholesterol and allergy medication.  Compl. at 36.  In an attempt to cover up her misconduct, defendant Travers lied that plaintiff threw his medication on the floor, and therefore she asked defendant Lashway to discontinue all of plaintiff's medications, including his pain medication.  *Id*. at 36-37.

In August, 2012, plaintiff filed multiple complaints and sick call slips asking for new

---

[3]  Plaintiff does not attribute this alleged misconduct to a particular person.

glasses because his were broken, but defendants Travers and Lashway "fail[ed] or refuse[d] to assist" him. Compl. at 38. Without his glasses, plaintiff suffers from eye pain, blurred vision, double vision, headaches or migraines, and cannot read well. *Id.* Plaintiff wrote to defendants Otis, Schroyer, Smith, Rabideau, Grinbergs, and Kornigsmann about his glasses, but they ignored him. *Id.* On August 23, 2012, plaintiff wrote to defendant Bellnier about the continued misconduct of defendants Travers and Lashway, asking that he investigate, but Bellnier did not correct the problem. *Id.* at 47.

Defendant Marlow denied plaintiff adequate medical care on August 30 through September 2, 2012, after he complained that the disciplinary loaf diet was causing him pain and other medical issues; she just smiled and walked away without examining plaintiff or reporting the problem to a doctor. Compl. at 40-41. On September 5, 14, and 15, 2012, defendant Travers denied plaintiff medical care when he reported medical problems arising from being placed on the loaf diet. *Id.* at 41, 45. Defendant Travers denied plaintiff medical care on October 17 and 18, 2012, for a sore throat, hoarseness, and difficulty swallowing. *Id.* at 50.

On November 27, 2012, plaintiff filed a grievance against defendants Travers and Lashway, claiming that they ignored his complaints of pain and his requests for his asthma inhaler, Lipitor, allergy medications, eyeglasses, an MRI, a colonoscopy, and that he be examined by a "doctor/specialist." Compl. at 54. From November, 2012, and forward, defendants Travers and Lashway continued to deny plaintiff medical care. *Id.* at 54-55.

Defendant nurse Waterson would not give plaintiff any pain medication for his injuries suffered as a result of an assault on January 24, 2013, and failed to report plaintiff's serious injuries in the medical records or to report the sexual assault by defendant Sisto. Compl. at

65.  Plaintiff requested sick call for his injuries from January 24, 2013, through February 3 or 7, 2013, and reported his "eye conditions, pains, and injuries" to defendants Greenizen, Uhler, Rock, and Otis in person and in letters and grievances.  *Id.* at 67.  Defendants Laramay and Bell were also notified.  *Id.*

Plaintiff sent letters to defendants Kemp, Gonzalez, and Bosco "reporting his medical and mental health conditions" and also advised defendant Evans.  Compl. at 68.

### 2.  Excessive Force/Sexual Assault

On September 18, 2012, defendant Patterson placed handcuffs on plaintiff's wrist too tight, pulled plaintiff back aggressively and violently, conducted a pat frisk, and intentionally touched plaintiff's genitals and buttocks.  Compl. at 45-46.  As a result, both of plaintiff's wrists were cut and bleeding and he had pain in his testicles, hands, wrists, and shoulders.  *Id.* at 46.  Plaintiff wrote to defendants Rock, Uhler, Fischer, and Oropallo about Patterson's misconduct but they failed to correct it.  *Id.* at 46.

On December 3, 2012, defendants Marshall, Lipka, Tuper, Whitford, and Greenizen physically assaulted plaintiff in his cell, pulled down his pants, and placed an unknown object in his "butt/anus/rectal area" and hit him on his butt, penis/testicles, and other parts of his body.  Compl. at 55.  Defendant Marlow refused to report the sexual assault and noted in plaintiff's record that he suffered no injuries, even though plaintiff had cuts on both wrists, several bruises, and his hands were swollen.  *Id.* at 56.  On December 3 and 4, 2012, plaintiff wrote to defendants Otis, Rock, and Fischer to report the incident, and defendant Rock sent defendant Oropallo to investigate the incident. *Id.* at 56.  Despite this, defendants Rock, Otis, Bellnier, and Uhler did not move plaintiff out of Upstate C.F.  *Id.* at 57.

On January 24, 2013, plaintiff was falsely accused of refusing to return his lunch tray

and an extraction team arrived at his cell, accompanied by defendant Zernia, who stated that defendants Rock and Otis had approved the cell extraction. Compl. at 64.[4]  Defendant Phillips opened plaintiff's cell door hatch, and a chemical agent was sprayed in the cell. *Id.*  Plaintiff was ordered to put his hands through the cell hatch, and when he did, he was hit with a heavy metal stick. *Id.*  Defendants Grant, Dunning, Richter, and Sisto entered the cell and beat plaintiff, who was not resisting but was lying face down on the floor. *Id.* at 64-65.  Plaintiff was taken to the decontamination room in handcuffs, where he was beaten again while defendant Phillips blocked the hand held video camera. *Id.* at 65-66.  Defendant Sisto choked plaintiff and put his finger inside of plaintiff's rectum while defendant Phillips falsely yelled that plaintiff was resisting. *Id.* at 65.  Defendant Sisto continued to assault plaintiff back at his cell. *Id.*

### 3.  Conditions of Confinement

Between March 2012 until April 2012, defendant Williams commenced a "campaign of harassment, discrimination[ ] and retaliation[ ]" by denying plaintiff toilet paper, tampering with his incoming magazines and newspapers which he had been approved to receive, and denying him cleaning supplies and food when she worked on his block. Compl. at 23.  On June 15, 2012, plaintiff filed a grievance reporting the unsanitary conditions on 9-Block where he was housed, including numerous insects, mice, rats, and vermin, but defendant Williams told plaintiff that insects, mice, rats, and vermin will not harm him but only want food. *Id.* at 32.

On August 27, 2012, defendants Forbes, Jarvis, and Santamore refused to give

---

[4] Plaintiff also claims that the cell extraction had been approved by the medical staff who claimed that plaintiff did not suffer from asthma, but plaintiff does not identify an individual from the medical staff who approved it. *Id.* at 64.

plaintiff his dinner or general library materials and closed the "vision panel" on plaintiff's cell door. Compl. at 40.

On November 14, 2012, defendant Bilow claimed that he observed plaintiff sticking an object up his rectal area. Compl. at 53. As a result of the accusation, defendant Bilow strip searched plaintiff in front of two other correctional officers during which time plaintiff was forced to "open his butt, show his penis, [and] open his mouth." *Id.* When nothing was found, plaintiff was placed under 24-hour observation for several days in a cold room, where he had to go to the bathroom in front of correctional officers, female and male. *Id.* Plaintiff was denied showers and clean clothes and did not have adequate toilet paper or water. *Id.* at 54. The room was lit 24 hours a day, and plaintiff had to sit in the boss chair multiple times. *Id.* at 53. Defendant Oropallo and Greenizen approved the foregoing. *Id.*

### 4. Restricted Diet

In May, 2012, plaintiff complained to defendants Rock, Kornigsmann, Fischer, Prack, Bellnier, Schroyer, and Otis about the medical problems that he was suffering from being placed on the disciplinary loaf diet. Compl. at 27-28. Defendants Rock, Kornigsmann, Fischer, Prack, Bellnier, Schroyer, Otis, Lashway, Uhler, Travers, and Lira knew that the loaf diet was inadequate and likely to cause pain. *Id.* at 27. Among other things, plaintiff suffered nausea, vomiting, stomach pains, increased bleeding and pains in his rectal area, constipation, and dry lips. *Id.* As a result of disciplinary proceedings held before defendant Lira, plaintiff was placed on the disciplinary loaf diet, which defendant Lashway approved on August 24, 2012, without first examining plaintiff, even knowing that the loaf diet created medical issues for plaintiff. *Id.* at 40-42; 47. Defendant Lira knew that it was not an adequate diet and if he placed plaintiff on the diet it would harm his health. *Id.* at 47.

8

## 5. Mail Interference, Destruction of Property, and Access to the Courts

Defendant Wilson denied plaintiff access to law library materials from February 29, 2012 until March 10, 2012, even though plaintiff had court deadlines.  Compl. at 16.  Defendant Wilson denied plaintiff copies of state court papers and other legal supplies needed to litigate his state court actions, and denied his requests for legal books and legal supplies.  *Id.* at 21-23, 30, 49.  Plaintiff filed grievances against defendant Wilson on March 10, 2012; April 9, 2012; and April 25, 2012.  *Id.* at 16, 22, 23.  On October 12, 2012, defendant Wilson told plaintiff that the legal documents that he had sent to the law library for copying were "missing/lost," however defendant Wilson intentionally threw them out because he saw his name in the papers.  *Id.* at 51.  Defendant Wilson acted in retaliation for the grievances and complaints that plaintiff had filed against him.  *Id.*  Plaintiff wrote to defendant Laramay, who is "responsible for the law library area," complaining about defendant Wilson's misconduct but he failed to resolve the problem.  *Id.* at 52.

On May 16, 2012, defendant Williams refused to put plaintiff's legal mail into the mail box but instead threw it on the floor and it went into the trash.  Compl. at 29.  On August 27, 2012, defendants Forbes, Jarvis, and Santamore denied plaintiff his incoming mail, law library materials, the responses to his grievances and appeals, and letters from his family.  *Id.* at 40.  On October 24, 2012, defendant Gokey ripped up plaintiff's law library slip.  *Id.* at 50.  In January, 2013, correctional officers ordered defendant Hungerford to deny plaintiff notary services, and she stated that she did not care if the courts rejected plaintiff's papers for lack of a notary.  *Id.* at 59.

On January 24, 2013, defendants Garland and Gokey searched plaintiff's cell and threw his legal papers all over the cell and in the shower.  Compl. at 61.  The legal papers

were out of their envelopes, and many were ripped, wet, or covered in peanut butter, jelly, and toothpaste. *Id.* Plaintiff's personal photos and magazines were destroyed or ripped, his clothes and jacket were wet and dirty, his headphones and radio were broken or unusable, and his legal books were confiscated. *Id.* Plaintiff reported the incident to defendant Phillips, who looked at plaintiff's cell, laughed, and said that's what happens when you file grievances. *Id.* at 62.

### 6. Processing Grievances

Between March, 2012, through June, 2012, defendants White and Woodward failed or refused to adequately or properly process plaintiff's grievances or appeals and mis-coded some of his grievances. Compl. at 18, 21, 31, 51-52. On May 10, 2012, plaintiff wrote to defendant Bellamy about the misconduct of White and Woodward, but she did not correct the misconduct. *Id.* at 26. Plaintiff also wrote to defendants White and Cromp requesting information on grievances that he filed. *Id.* at 58.

### 7. Threats and Harassment

Defendant Patterson threatened to assault plaintiff on September 6, 2012. Compl. at 45. Defendant Gokey harassed, discriminated, and retaliated against plaintiff on September 6, September 17, and October 12, 2012, and continued to threaten him until he left Upstate C.F. *Id.* at 48. On October 24, 2012, while defendant Gokey was escorting defendant Mainville in 9-Block, he stopped in front of plaintiff's cell and threatened him for filing a grievance against him. *Id.* at 50. On November 14, 2012, defendants Travers and Bilow stopped in front of plaintiff's cell and verbally sexually harassed him. *Id.* at 55. In December, 2012, defendants Oropallo and Marshall threatened plaintiff that if he reported misconduct again he would be beaten and raped. *Id.* at 56-57. On January 8, 2013, defendant Whitford

10

threatened plaintiff with physical violence.  *Id.* at 59.

### 8.  Religion Claims

On August 27, 2012, defendants Forbes, Jarvis, and Santamore refused to feed

plaintiff his kosher meal at dinner.  Compl. at 40.

### 9.  False Misbehavior Reports

False misbehavior reports were issued to plaintiff by defendants Bilow and Wilson on

November 14, 2012; defendants Whitford and Tabb on December 3, 2012; defendant Forbes

on December 24, 2012; and defendant Hungerford on January 2, 2013.  Compl. at 55-59.

### 10.  Due Process

In August, 2012, defendant Lira presided as hearing officer over three of plaintiff's

disciplinary hearings.  Compl. at 47.  Defendant Lira denied plaintiff due process during the

hearings because he denied plaintiff video tapes and audio records of the alleged incidents,

and found plaintiff guilty without sufficient evidence.  *Id.*  Defendant Lira sentenced plaintiff to

seven days on the disciplinary loaf diet for each of the hearings, amounting to twenty-one

days total, even though he knew that being on the loaf caused harm to plaintiff and was not

an adequate diet.  *Id.*

### 11.  Denial of Access to Medical Records

On May 11, 2012, plaintiff filed a grievance complaining that defendants Smith and

Rabideau were denying plaintiff copies of his medical records in violation of the Health

Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub.L. 104-191, 110 Stat.

1936, and New York State Department of Corrections and Community Supervision

("DOCCS") regulations.  Compl. at 20.  Plaintiff wrote to defendant Schroyer about the

problem with his medical records. *Id.* at 35. Plaintiff wrote to defendant Kornigsmann on May 13, 2012 about the misconduct of defendants Grinsberg, Lashway, Travers, and Marlow regarding violating HIPAA and state regulations, but he did not respond. *Id.* at 27. Grinsberg responded to plaintiff telling him that there is no provision allowing him to send grievances directly to the Central Office. *Id.* at 29.

Plaintiff requests monetary damages. Compl. at 82. For a more complete statement of plaintiff's claims, refer to the complaint.

### 12. Summary of Claims

In deference to plaintiff's pro se status, the complaint is liberally construed to assert the following claims: (1) Eighth Amendment medical indifference claims against defendants Travers, Lashway, Marlow, Smith, Rock, Rabideau, Schroyer, Kornigsmann, Grinbergs, Otis, Bellnier, Fischer, Waterson, Laramay, Quinn, Bell, Evans, Kemp, Gonzalez, and Bosco; (2) Eighth Amendment excessive force claims against defendants Patterson, Marshall, Lipka, Tuper, Whitford, Greenizen, Otis, Rock, Fischer, Oropallo, Zernia, Phillips, Grant, Dunning, Richter, Sisto, Bellnier, and Uhler; (3) Eighth Amendment conditions of confinement claims against defendants Williams, Forbes, Jarvis, Santamore, Bilow, Oropallo, and Greenizen; (4) Eighth Amendment claims against defendants Rock, Kornigsmann, Fischer, Prack, Bellnier, Schroyer, Otis, Lashway, Uhler, Travers, and Lira relating to the restricted diet; (5) property destruction claims against defendants Gokey and Garland; (6) First Amendment mail interference claims against defendants Forbes, Jarvis, Santamore, and Williams; (7) First Amendment access to the courts claims against defendants Wilson, Laramay, Gokey, Hungerford, Garland, and Phillips; (8) First Amendment retaliation claims against defendants Travers, Lashway, Wilson, Gokey, and Phillips; (9) interference with grievance claims against

12

defendants White, Woodward, Bellamy, and Cromp; (10) claims that defendants Travers, Patterson, Bilow, Lashway, Phillips, Gokey, and Marshall threatened and harassed plaintiff; (11) First Amendment religion claims against defendants Forbes, Jarvis, and Santamore; (12) false misbehavior report claims against defendants Whitford, Tabb, Forbes, Bilow, Wilson, and Hungerford; (13) a Fourteenth Amendment due process claim against defendant Lira; (14) claims that defendants Kornigsmann, Grinbergs, Lashway, Travers, Marlow, Smith, Rabideau, and Schroyer violated HIPAA and DOCCS regulations; (15) Fourteenth Amendment Equal Protection claims; (16) conspiracy claims; and (17) state law tort claims.

### B.    Analysis

Plaintiff brings this action pursuant to Section 1983, which establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  In order to maintain a Section 1983 action, a plaintiff must allege two essential elements.  First, "the conduct complained of must have been committed by a person acting under color of state law." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994).  Second, "the conduct complained of must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." *Id.*

It is well settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)); *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).  "[A] Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'" *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted).  "[V]icarious liability is

13

inapplicable to . . . § 1983 suits." *Iqbal*, 556 U.S. at 676. Prior to *Iqbal*, the Second Circuit held that supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)).[5]

### 1. Eighth Amendment Medical Indifference Claims

To state an Eighth Amendment claim for medical indifference, a plaintiff must allege that the defendant was deliberately indifferent to a serious medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Deliberate indifference has two necessary components, one objective and the other subjective. *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). The objective component of an Eighth Amendment deliberate indifference claim "requires that the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Hathaway*, 99 F.3d at 553) (internal quotation marks omitted). Under the subjective element, medical mistreatment rises to the level of deliberate

---

[5] The Second Circuit has not yet addressed how the Supreme Court's decision in *Iqbal* affected the standards in *Colon* for establishing supervisory liability. *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (noting that *Iqbal* may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations" but not reaching the impact of *Iqbal* on *Colon* because the complaint "did not adequately plead the Warden's personal involvement even under *Colon*); *see also Hogan v. Fischer*, 738 F.3d 509, 519 n.3 (2d Cir. 2013) (expressing "no view on the extent to which [*Iqbal* ] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]" (citing *Grullon*, 720 F.3d at 139)).

indifference only when it "involves culpable recklessness, i.e., an act or a failure to act . . . that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance v. Armstrong*, 143 F. 3d 698, 703 (2d Cir. 1998) (quoting *Hathaway*, 99 F.3d at 553). "Deliberate indifference requires more than negligence but less than conduct undertaken for the very purpose of causing harm." *Hathaway*, 37 F.3d at 66. To assert a claim for deliberate indifference, an inmate must allege that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702. The inmate must also demonstrate that the provider consciously and intentionally disregarded or ignored that serious medical need. *Farmer*, 511 U .S. at 835; *see also Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999) (With respect to the subjective element, a plaintiff must also demonstrate that defendant had "the necessary level of culpability, shown by actions characterized by 'wantonness.'"). An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976).

Plaintiff alleges that defendants Travers, Marlow, Lashway, and Waterson denied him adequate medical care for various medical issues including, but not limited to, chronic pain, rectal bleeding, vision problems, migraines, side-effects suffered as a result of being placed on the disciplinary loaf diet, and injuries suffered from an assault by staff. Compl. at 36-37, 38, 40-42, 45, 47, 50, 54, and 65. Plaintiff also claims that he reported the misconduct of defendants Travers, Marlow, and Lashway to defendants Fischer, Rock, Schroyer, Kornigsmann, Grinbergs, Smith, Rabideau, Otis, Bellnier, Greenizen, Uhler, Laramay, Quinn, and Bell (*see* Compl. at 15, 24-26, 34, 38, 47, and 67) but they failed to correct the

misconduct. Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see e.g. Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that plaintiff's Eighth Amendment medical indifference claims against defendants Travers, Marlow, Lashway, Waterson, Fischer, Rock, Schroyer, Kornigsmann, Grinbergs, Smith, Rabideau, Otis, Bellnier, and Uhler survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

With respect to defendants Laramay, Quinn, Bell, Greenizen, whom plaintiff identifies respectively as two Lieutenants, a Captain, and a Sergeant, there are no facts to plausibly suggest that they had the authority or the ability to correct alleged misconduct by the medical staff. Accordingly, plaintiff's Eighth Amendment medical indifference claims against defendants Laramay, Quinn, Bell, and Greenizen are dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

Finally, plaintiff claims that defendants Evans, Kemp, Gonzalez, and Bosco failed to provide him with adequate mental health care. Compl. at 68. Conclusory allegations that defendants were aware of a plaintiff's medical needs and failed to provide adequate care are generally insufficient to state an Eighth Amendment claim of inadequate medical care. *See, e.g., Gumbs v. Dynan*, No. 11-CV-0857, 2012 WL 3705009, at *12 (E.D.N.Y. Aug. 26, 2012) ("conclusory allegations that the defendants were aware of plaintiff's medical needs and chronic pain but failed to respond are generally not sufficient proof of defendant's deliberate indifference and cannot survive a Rule 12(b)(6) motion to dismiss") (citing *Adekoya v. Holder*, No. 09 Civ 10325, 751 F. Supp. 2d 688, 691 (S.D.N.Y. Nov. 12, 2010) (finding conclusory allegations that medical staff defendants were aware of plaintiff's medical needs and failed to

16

provide adequate care insufficient to defeat a motion to dismiss a claim of inadequate medical care)).  There is also nothing to plausibly suggest that these defendants exhibited the requisite state of mind to sustain an Eighth Amendment deliberate indifference claim. Therefore, plaintiff's Eighth Amendment medical indifference claims against defendants Evans, Kemp, Gonzalez, and Bosco are dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 2. Eighth Amendment Excessive Force Claims

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials.  *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle*, 429 U.S. at 104.  This includes punishments that "involve the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).  The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency."  *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).[6]

Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see* e.g. *Sealed Plaintiff*, 537 F.3d at 191, the Court finds that plaintiff's Eighth Amendment excessive force claims against defendants Patterson, Marshall, Lipka,

---

[6]  In this regard, while "a *de minimis* use of force will rarely suffice to state a constitutional claim," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993), the malicious use of force to cause harm constitutes an Eighth Amendment violation per se because in such an instance "contemporary standards of decency are always violated." *Blyden*, 186 F.3d at 263 (citing *Hudson*, 503 U.S. at 9).  The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986)); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973).

Tuper, Whitford, Greenizen, Otis, Rock, Zernia, Phillips, Grant, Dunning, Richter, and Sisto survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

Plaintiff's Eighth Amendment excessive force claims against defendants Fischer, Oropallo, Bellnier, and Uhler stand on a different footing. Construing the complaint liberally, plaintiff alleges that after he was assaulted by staff on December 3, 2012, he notified these defendants about an alleged assault and they failed to take corrective measures. Compl. at 56-57. Plaintiff does not contend that defendants Fischer, Oropallo, Bellnier, or Uhler directly participated in the alleged constitutional violation, namely plaintiff's December 3, 2012 assault. Rather, the gravamen of plaintiff's complaint against these defendants is that he advised of them of misconduct after the fact. However, "[i]f the official is confronted with a violation that has already occurred and is not ongoing, then the official will not be found personally responsible for failing to 'remedy' a violation." *Harnett v. Barr*, 538 F. Supp. 2d 511, 524 (N.D.N.Y. 2008); *see also Young v. Kihl*, 720 F. Supp. 22, 23 (W.D.N.Y. 1989) ("[T]he wrong . . . [must] have been capable of mitigation at the time the supervisory official was apprised thereof . . . Without such caveat, the personal involvement doctrine may effectively and improperly be transformed into one of *respondeat superior.*"); *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001) ("[A] 'failure to remedy' theory of liability is not available with respect to discrete and completed violations."). Thus, here, because the assault had already occurred, defendants Fischer, Oropallo, Bellnier, and Uhler cannot be held liable on the basis of a failure to correct. Accordingly, plaintiff's Eighth Amendment excessive force claims against defendants Fischer, Oropallo, Bellnier, and Uhler are dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

18

### 3. Eighth Amendment Conditions of Confinement Claims

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. Const. amend. VIII. The Second Circuit, in addressing the needs protected by the Eighth Amendment, has stated that sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." *Wolfish v. Levi*, 573 F.2d 118, 125 (2d Cir.1978), *rev'd on other grounds sub nom. Bell v. Wolfish*, 441 U.S. 520 (1979); *Lareau v. Manson*, 651 F.2d 96, 106 (2d Cir. 1981). "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Not every governmental action affecting the interests or well-being of a prisoner is actionable under the Eighth Amendment. "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *see also Gaston v. Coughlin*, 249 F.3d 156, 163 (2d Cir. 2001).

To demonstrate that the conditions of confinement constitute cruel and unusual punishment in violation of the Eighth Amendment, a plaintiff must satisfy both an objective and subjective element. *See Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996). A plaintiff must demonstrate that (1) the conditions of confinement resulted in "unquestioned and serious deprivations of basic human needs," *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir.1985); *see also Jolly*, 76 F.3d at 480, and (2) that the defendants acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 303-04 (1991).

Plaintiff's allegations that defendants Forbes, Jarvis, and Santamore denied him dinner and general library materials on one day and closed the "vision panel" on his cell door, *see*

19

Compl. at 40, do not plausibly suggest that these defendants deprived plaintiff of basic human needs. *See Rhodes*, 452 U.S. at 347 (Routine discomfort and restrictive or even harsh prison conditions "are part of the penalty that criminal offenders pay for their offenses against society." ); *see also Hudson*, 503 U.S. at 9. Plaintiff's allegations also do not plausibly suggest that these defendants acted with the requisite deliberate indifference. Accordingly, the Eighth Amendment conditions of confinement claims against defendants Forbes, Jarvis, and Santamore are dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see e.g. Sealed Plaintiff*, 537 F.3d at 191, the Court finds that plaintiff's Eighth Amendment conditions of confinement claims against defendants Williams, Bilow, Oropallo, and Greenizen, *see* Compl. at 32, 53-54, survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### 4. Restricted Diet Claims

The Eighth Amendment requires "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir.1983) (per curiam) (internal quotation marks omitted); *see also Willey v. Kirkpatrick*, 801 F.3d 51, 61 (2d Cir. 2015). Plaintiff alleges that the food that he was served when placed on the restricted diet was nutritionally inadequate and caused him physical harm. In light of *Sealed Plaintiff*, 537 F.3d at 191, the Court finds that plaintiff's Eighth Amendment restricted diet claims against defendants Rock, Kornigsmann, Fischer, Prack, Bellnier, Schroyer, Otis, Lashway,

Uhler, Travers, and Lira survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### 5. Destruction of Property Claims

The Supreme Court has held that the unauthorized intentional destruction of prisoner's property may not be the basis for constitutional claims if sufficient post deprivation remedies are available to address the claim. *Hudson v. Palmer*, 468 U.S. 517, 531 (1984) (citing *Parratt v. Taylor*, 451 U.S. 527, 541 (1981)); *see also Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006) ("When the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides meaningful post deprivation remedy."). "New York in fact affords an adequate post-deprivation remedy in the form of, *inter alia*, a Court of Claims action." *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001); *Davis v. New York*, 311 Fed. App'x 397, 400 (2d Cir. 2009) (The existence of this adequate post-deprivation state remedy would thus preclude [plaintiff's] due process claim under § 1983 [for lost personal property].").

The destruction of property claims against defendants Gokey and Garland are dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim under Section 1983 upon which relief may be granted.

### 6. First Amendment Mail Interference Claims

The First Amendment protects an inmate's right to send and receive both legal and nonlegal mail, although prison officials may regulate that right if the restrictions they employ are "'reasonably related to legitimate penological interests.'" *Thornburgh v. Abbott,* 490 U.S. 401, 409 (1989) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)); see *Johnson v. Goord,*

445 F.3d 532, 534 (2d Cir. 2006) (holding that prisoners do have a right – albeit a limited one – to send and receive mail (citation omitted). Legal mail is entitled to greater protection from interference than nonlegal mail. *See Davis v. Goord,* 320 F.3d 346, 351 (2d Cir. 2003) (citations omitted). A single instance of mail tampering that does not result in the plaintiff suffering any damage is generally insufficient to support a constitutional challenge. *See Morgan v. Montanye*, 516 F.2d 1367, 1371 (2d Cir. 1975).[7] "Rather, the inmate must show that prison officials 'regularly and unjustifiably interfered with the incoming legal mail.'" *Davis,* 320 F.3d at 351 (quoting *Cancel v. Goord*, No. 00 CIV 2042, 2001 WL 303713, at *6 (S.D.N.Y. Mar. 29, 2001) (citing *Washington v. James*, 782 F.2d 1134,1139 (2d Cir. 1986))). Indeed, courts have consistently applied *Morgan* to dismiss suits by inmates alleging unconstitutional opening of their legal mail without any showing of damages. *See Pacheo v. Comisse,* 897 F. Supp. 671, 681 (N.D.N.Y. 1995) (dismissing inmate's claim based on a single instance in which defendants allegedly opened his legal mail outside of his presence because "he has shown no prejudice as a result of the allegedly unauthorized opening"); *Walton v. Waldron,* 886 F. Supp. 981, 986 (N.D.N.Y. 1995) ("Existing precedent on an inmate's claim that his 'legal' mail has been improperly handled by prison officials requires a showing of harm."); *Gittens v. Sullivan,* 670 F. Supp. 119, 124 (S.D.N.Y. 1987), *aff'd,* 848 F.2d 389 (2d Cir. 1988) (holding that inmate's allegation that his legal mail was "interfered with on one occasion is insufficient to state a cause of action given that the interference complained of did not affect plaintiff's access to the courts").

Plaintiff alleges that on May 16, 2012, defendant Williams threw a piece of plaintiff's

---

[7] To the extent that plaintiff may be attempting to assert that he was denied access to the courts as a result of this mail interference, that purported claim is discussed below.

legal mail in the trash, Compl. at 29, and on August 27, 2012, defendants Forbes, Jarvis, and Santamore did not give plaintiff his incoming mail, *id.* at 40. Even accepting as true all of the allegations in plaintiff's complaint and drawing all inferences in plaintiff's favor, plaintiff has alleged only that each of the forgoing defendants interfered with his mail on one occasion, and there is nothing to plausibly suggest that any single instance of mail interference caused plaintiff to suffer a constitutionally significant injury.

Accordingly, the First Amendment mail interference claims against defendants Williams, Forbes, Jarvis, and Santamore are dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 7. First Amendment Access to the Courts Claims

It is well settled that inmates have a First Amendment right to "petition the Government for a redress of grievances."[8] This right, which is more informally referred to as a "right of access to the courts," requires States "to give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights." *Bounds v. Smith*, 430 U.S. 817, 828 (1977), *modified on other grounds, Lewis v. Casey*, 518 U.S. 343, 350 (1996); *see also Bourdon v. Loughren*, 386 F.2d 88, 92 (2d Cir. 2004). "However, this right is not 'an abstract, freestanding right . . . .' and cannot ground a Section 1983 claim without a showing of 'actual injury.'" *Collins v. Goord*, 438 F. Supp. 2d 399, 415 (S.D.N.Y. 2006) (quoting *Lewis*, 518 U.S. at 351).

To state a claim for denial of access to the courts, a plaintiff must assert non-conclusory allegations demonstrating both (1) that the defendant acted deliberately and

---

[8] *See* U.S. Const. amend. I ("Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.").

maliciously, and (2) that the plaintiff suffered an actual injury. *Lewis*, 518 U.S. at 353. "A hypothetical injury is not sufficient to state a claim for violation of the right of access to the courts." *Amaker v. Haponik,* No. 98 Civ. 2663, 1999 WL 76798, at *3 (S.D.N.Y. Feb.17, 1999). Instead, a plaintiff must demonstrate "actual injury" by establishing that the denial "hindered his efforts" to pursue a non-frivolous legal claim. *Lewis*, 518 U.S. at 349, 351-53. "Mere 'delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation.'" *Davis*, 320 F.3d at 352 (citing *Jermosen v. Coughlin*, 877 F. Supp. 864, 871 (S.D.N.Y. 1995)).

The Supreme Court has stated that in order to allege a denial of access to the courts claim, "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint . . . ." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). The Supreme Court instructed that the underlying claim "must be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Id*. at 415-16. "[T]he complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued, and a like plain statement should describe any remedy available under the access claim and presently unique to it." *Id*. at 417-18 (footnote omitted).

Here, plaintiff alleges only that he was denied legal materials and supplies, and some of his legal papers were destroyed. Compl. at 16, 21-23, 30, 40, 49, 50-52, 59-60. Even accepting plaintiff's allegations as true, he nevertheless offers no facts to suggest how the denial or destruction of legal materials "prejudiced his ability to seek redress from the judicial system." *Smith v. O'Connor,* 901 F. Supp. 644, 649 (S.D.N.Y. 1995). Plaintiff fails to provide any information in the complaint about the basis of any court action or proceeding which was

actually frustrated as a result of the loss or destruction of legal materials. *See Christopher*, 536 U.S. at 416 ("Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant.") (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513-515 (2002)). Simply stated, plaintiff fails to allege any facts to plausibly suggest that a non-frivolous claim was actually hindered or prejudiced because of the alleged denial of access to legal materials. *See Lewis*, 518 U.S. at 360 n.7 ("Courts have no power to presume and remediate harm that has not been established."); *Arce v. Walker*, 58 F. Supp. 2d 39 (W.D.N.Y. 1999) ("a prisoner's conclusory assertion that he suffered prejudice does not suffice to support an access to courts claim . . . some showing of impaired access is required"); *see also Davis*, 320 F.3d at 352 ("Mere 'delay in being able to . . . communicate with the courts does not rise to the level of a constitutional violation.'").

Accordingly, plaintiff's First Amendment access to the courts claims against defendants Wilson, Laramay, Gokey, Hungerford, Garland, and Phillips do not survive sua sponte review and are dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 8. First Amendment Retaliation Claims

Courts must approach claims of retaliation "'with skepticism and particular care' because 'virtually any adverse action taken against a prisoner by a prison official–even those otherwise not rising to the level of a constitutional violation–can be characterized as a constitutionally proscribed retaliatory act.'" *Davis*, 320 F.3d at 352 (quoting *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). To state a plausible claim, a plaintiff asserting a First Amendment

retaliation claim must advance "non-conclusory" allegations establishing "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action." *Davis*, 320 F.3d at 352 (quoting *Dawes*, 239 F.3d at 492). "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

Plaintiff alleges that he filed grievances against defendants Travers and Lashway on April 17, 2012, and November 27, 2012. Compl. at 38, 54. Plaintiff filed a grievance against defendant Travers on June 14, 2012, and against defendant Lashway on June 15, 2012. *Id.* at 21-22. Plaintiff also filed a lawsuit against defendant Lashway in 2008, which was settled in 2010; defendant Lashway mentioned the lawsuit to plaintiff and said that she remembered him. *Id.* at 12-13. From November, 2012, through February, 2013, plaintiff claims that defendants Travers and Lashway denied him adequate medical care. *See*, e.g. Compl. at 12-13, 18-19, 36-38, 50.

Plaintiff filed grievances against defendant Wilson on March 10, 2012, April 9, 2012, and April 25, 2012. Compl. at 16, 22-23. On October 12, 2012, defendant Wilson intentionally destroyed some of plaintiff's legal documents because he saw that his name was mentioned in them and allegedly in retaliation for plaintiff's grievances. *Id.* at 51.

On October 24, 2012, defendant Gokey threatened to harm plaintiff because plaintiff had filed a grievance against him. Compl. at 50. Defendant Gokey told plaintiff that his "time [will come] very soon" and he ripped up plaintiff's law library slip. *Id.* On January 24, 2013, defendant Gokey destroyed some of plaintiff's legal papers and personal property. *Id.* at 61. Plaintiff complained to defendant Phillips, the block officer, and he told plaintiff that's what

happens when you file grievances.  *Id.* at 62.

In light of *Sealed Plaintiff*, 537 F.3d at 191, the Court finds that the First Amendment retaliation claims against defendants Travers, Lashway, Wilson, Gokey, and Phillips survive sua sponte review and require a response.  In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### 9.  Interference with Grievance Claims

It is well-established that a prison inmate has no constitutional right of access to such an internal grievance process.  *Rhodes v. Hoy*, No. 9:05-CV-0836 (FJS/DEP), 2007 WL 1343649, at *6 (N.D.N.Y. May 5, 2007) (noting that inmates have "no constitutional right of access to the established inmate grievance program"); *Davis v. Buffardi*, No. 9:01-CV-0285 (PAM/GJD), 2005 WL 1174088, at *3 (N.D.N.Y. May 4, 2005) ("[P]articipation in an inmate grievance process is not a constitutionally protected right."); *Cancel*, 2001 WL 303713, at *3 (holding that "inmate grievance procedures are not required by the Constitution" and therefore failure to see to it that grievances are properly processed does not create a claim under Section 1983).  Simply stated, there is no underlying constitutional obligation to afford an inmate meaningful access to the internal grievance procedure, or to investigate and properly determine any such grievance.

Plaintiff's interference with grievance claims against defendants White, Woodward, Bellamy, and Cromp do not survive sua sponte review and are dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 10.  Verbal Threats and Harassment

Verbal threats and harassment, absent physical injury, are not constitutional violations cognizable under Section 1983.  *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (per

curiam); *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) ("verbal harassment or profanity alone, unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983") (quotation omitted); *Rivera v. Goord*, 119 F. Supp. 2d 327, 342 (S.D.N.Y. 2000) (collecting cases).

Accordingly, plaintiff's claims that defendants Travers, Patterson, Bilow, Lashway, Phillips, Gokey, and Marshall verbally threatened and harassed him are dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 11. First Amendment Religion Claims

The First Amendment Free Exercise Clause guarantees the right to free exercise of religion. *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). The Free Exercise Clause, and the First Amendment generally, applies to prison inmates, subject to certain limitations. *Ford v. McGuinnis*, 352 F.3d 582, 588 (2d Cir. 2003) ("Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause.") (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). "[A] prisoner has a right to a diet consistent with his or her religious scruples." *Ford v. McGinnis*, 352 F.3d 582, 597 (2d Cir. 2003). To state a claim under the First Amendment Free Exercise Clause, a plaintiff must demonstrate that his or her sincerely held religious beliefs were substantially burdened by defendant's conduct. *Singh v. Goord,* 520 F. Supp. 2d 487, 498, 509 (S.D.N.Y. 2007); *see also Salahuddin v. Goord*, 467 F.3d at 274-75 (To prevail on a free-exercise claim, a prisoner "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs."). In order to be considered a "substantial burden," the plaintiff "must demonstrate that the government's action pressure[d] him to commit an act

28

forbidden by his religion or prevent[ed] him from engaging in conduct or having a religious experience mandated by his faith." *Muhammad v. City of New York Dep't of Corr.,* 904 F. Supp. 161, 188 (S.D.N.Y. 1995) (citations omitted).  The burden must be more than an inconvenience, it must substantially interfere with a tenet or belief that is central to the religious doctrine.  *Id.*

Here, plaintiff fails to identify his religion, thus making it impossible for the Court to determine if the denial of one kosher meal placed a substantial burden on his religious beliefs.  Plaintiff alleges no facts to suggest that defendants interfered with a tenet or belief that is central to any religious doctrine.  Accordingly, plaintiff's First Amendment free exercise claims against defendants Forbes, Jarvis, and Santamore are dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 12.  False Misbehavior Reports

It is well settled that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)); *accord, Pittman v. Forte*, No. 9:01-CV-0100, 2002 WL 31309183, at *5 (N.D.N.Y. July 11, 2002) (Sharpe, M.J.); *see also Santana v. Olson*, No. 07-CV-0098, 2007 WL 2712992, at *2 (W.D.N.Y. Sept. 13, 2007) ("[T]he filing of a false behavior report by a correctional officer does not state a claim for relief.").  The only way that false accusations contained in a misbehavior report can rise to the level of a constitutional violation is when there has been more such as "retaliation against the prisoner for exercising a constitutional right." *Boddie*, 105 F.3d at 862.  In addition, "[t]he filing of a false report does not, of itself, implicate the guard who filed it in constitutional

violations which occur at a subsequent disciplinary hearing."[9]  *Williams v. Smith*, 781 F.2d 319, 324 (2d Cir. 1986) (rejecting prisoner's "but for" argument as to guard who prepared misbehavior report but was not involved in Tier III hearing) (citation omitted).

Plaintiff's claims that defendants Whitford, Tabb, Forbes, Bilow, Wilson, and Hungerford  issued him false misbehavior reports are dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 13.  Fourteenth Amendment Due Process Claim

"A prisoner's liberty interest is implicated by prison discipline, such as SHU confinement, only if the discipline 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life'. . . ."  *Palmer v. Richards,* 364 F.3d 60, 64 (2d Cir. 2004) (quoting *Sandin v. Conner,* 515 U.S. 472, 484 (1995)).

Here, defendant Lira found plaintiff guilty of misconduct as a result of each of the three disciplinary hearings and after each hearing sentenced plaintiff to seven days of the disciplinary diet.  The Second Circuit has held that the imposition of a loaf diet does not impose an atypical and significant hardship on inmates, even where the inmate alleges that the diet caused severe stomach pain and weight loss.  *McEachin v. McGuinnis*, 357 F.3d 197 (2d Cir. 2004) (finding that a seven-day post-hearing restricted diet did not impose an atypical and significant hardship).

Based upon the foregoing, the Fourteenth Amendment due process claims against defendant Lira are dismissed pursuant to U.S.C. § 1915A(b) for failure to state a claim upon

---

[9]  "The only constitutional violation that could occur in this situation is if plaintiff were not provided adequate due process in any proceeding which is based upon the misbehavior report.  In that case, the claim is not based on [the] truth or falsity of the misbehavior report but instead on the conduct of the hearing itself." *Santana*, 2007 WL 2712992, at *2.

which relief may be granted.

## 14. Denial of Access to Medical Records

Insofar as plaintiff's complaint could be liberally construed to allege a claim under the HIPAA, "Congress did not intend to create a private right of action through which individuals can enforce HIPAA's provisions." *Pecou v. Forensic Comm. Personnel*, No. 06-CV-3714, 2007 WL 1490450, at *2 (E.D.N.Y. Jan. 5, 2007) (citing *Barnes v. Glennon*, No. 9:05-CV-0153 (LEK/RFT), 2006 WL 2811821, at *5 (N.D.N.Y. Sept. 28, 2006) (The HIPAA statute does not "either explicitly or implicitly, confer to private individuals a right of enforcement."); *University of Colorado Hosp. Auth. v. Denver Publ'g Co.*, 340 F. Supp. 2d 1142, 1144 (D. Colo. 2004) (finding no evidence that Congress intended to create a private right of action under HIPAA)). Accordingly, plaintiff may not maintain a claim for the alleged denial of access to his medical records under HIPAA.

Construing the complaint liberally, plaintiff also claims that defendants Kornigsmann, Grinbergs, Lashway, Travers, Marlow, Smith, Rabideau, and Schroyer violated DOCCS regulations. A Section 1983 claim brought in federal court is not the appropriate forum to raise violations of prison regulations or state law. *See Hyman v. Holder*, No. 96 Civ. 7748, 2001 WL 262665, at *6 (S.D.N.Y. Mar. 15, 2001) (the failure to follow a New York State DOCCS Directive or prison regulation does not give rise to a federal constitutional claim); *see also Patterson v. Coughlin*, 761 F.2d 886, 891 (2d Cir. 1985) ("[A] state employee's failure to conform to state law does not itself violate the Constitution and is not alone actionable under § 1983 . . . ."); *Fluent v. Salamanca Indian Lease Auth.*, 847 F. Supp. 1046, 1056 (W.D.N.Y. 1994) (Section 1983 imposes liability for violations of rights protected by the Constitution and laws of the United States, not for violations arising solely out of state or common-law

principles).

Thus, plaintiff's claims that defendants Kornigsmann, Grinbergs, Lashway, Travers, Marlow, Smith, Rabideau, and Schroyer violated HIPAA and DOCCS regulations are dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 15. Fourteenth Amendment Equal Protection Claims

The Equal Protection Clause requires that the government treat all similarly situated people alike. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Specifically, the Equal Protection Clause "bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)). To state a viable claim for denial of equal protection, a plaintiff generally must allege "purposeful discrimination . . . directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995). In the alternative, under a "class of one" theory, plaintiff must allege that he has been intentionally treated differently from others similarly situated, with no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *DeMuria v. Hawkes*, 328 F.3d 704, 706 (2d Cir. 2003).

Plaintiff's allegation that defendants denied him equal protection is entirely conclusory, with no facts to support any claim that he was discriminated against, or even to suggest on what basis he was discriminated against. *See* Compl. at 74 (alleging only that defendants

32

"intentionally discriminated against [him] and treated him differently from other similarly situated inmates. . . [with] no rational basis."). *See Iqbal*, 556 U.S. at 678 (noting that a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice) (internal quotations and alterations omitted).

As a result, plaintiff's Equal Protection claims are dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 16. Conspiracy Claims

A conspiracy claim under Section 1983 must allege that: (1) an agreement existed between two or more state actors to act in concert to inflict an unconstitutional injury on plaintiff and (2) an overt act was committed in furtherance of that goal. *Ciambriello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002). Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed. *Ciambriello*, 292 F.3d at 325; *see also Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir. 1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."); *Brown v. City of Oneonta,* 106 F.3d 1125, 1133 (2d Cir. 1997) (complaints containing only conclusory, vague or general allegations of a conspiracy to deprive a person of constitutional rights do not state a claim for relief). To state a conspiracy claim, plaintiff "must provide some factual basis supporting a meeting of the minds." *See Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003). Thus, plaintiff must "make an effort to provide some details of time and place and the alleged effects of the conspiracy . . . [including] facts to demonstrate that the defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Warren v. Fischl*, 33 F. Supp. 2d 171, 177 (E.D.N.Y. 1999) (citations omitted).

Here, plaintiff does not assert any facts giving rise to a conspiracy, but instead makes only vague statements that defendants somehow conspired to deny him rights. *See* Compl. at 81. There are no facts upon which it may be plausibly inferred that the defendants came to an agreement, or a "meeting of the minds," to violate his constitutional rights. *See Iqbal*, 556 U.S. at 680-81 (allegations that the defendants "willfully and maliciously agreed to subject" the plaintiff to harsh conditions of confinement "solely on account of his religion, race, and/or national origin" found conclusory); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (finding allegations of conspiracy "baseless" where the plaintiff "offer[ed] not a single fact to corroborate her allegation of a 'meeting of the minds' among the conspirators"); *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (dismissal of "conclusory, vague or general allegations of conspiracy to deprive a person of constitutional rights" is proper).

Plaintiff's conspiracy claims are dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 17. Defendants R. Isobella, Nason, and Spinner

The Court notes that there are no allegations of wrongdoing against defendants R. Isobella, Nason, and Spinner in the body of the complaint. "Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff." *Cipriani v. Buffardi*, No. 9:06-CV-889 (GTS/DRH), 2007 WL 607341, at *1 (N.D.N.Y. Feb. 20, 2007) (citing *Gonzalez v. City of New* York, No. 97 CIV. 2246, 1998 WL 382055, at *2 (S.D.N.Y. Jul. 9, 1998)); *see also Crown v. Wagenstein*, No. 96 CIV. 3895, 1998 WL 118169, at *1 (S.D.N.Y. Mar. 16, 1998) (mere inclusion of warden's name in complaint insufficient to allege personal involvement); *Taylor v. City of New York,* 953 F. Supp. 95, 99 (S.D.N.Y. 1997) (same).

Accordingly, R. Isobella, Nason, and Spinner are dismissed as defendants to this action.

### 18. State Law Tort Claims

Plaintiff asserts state law tort claims.  Compl. at 76-80.[10]

Section 24 of the New York State Correction Law provides in pertinent part:

> 1. No civil action shall be brought in any court of the state . . . against any officer or employee of the department . . . in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.
>
> 2. Any claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties of any officer or employee of the department shall be brought and maintained in the court of claims as a claim against the state.

N.Y. Correct. Law § 24.  "[T]he Second Circuit has held that the immunity from suit in state court provided to [DOCCS] employees by § 24 extends to suits for tort claims based on state law against [DOCCS] employees in federal court."  *Brown v. Dep't of Corr. Servs.*, No. 09 Civ. 949, 2011 WL 2182775, at *9 (W.D.N.Y. June 2, 2011) (citing *Baker v. Coughlin*, 77 F.3d 12, 14 (2d Cir. 1996)).  Nothing in the complaint suggests that the DOCCS defendants acted outside the scope of their employment in connection with state law tort claims asserted by plaintiff.  *See* Compl. at 76-80.  Thus, to the extent plaintiff seeks monetary damages from the DOCCS defendants in their personal capacities, plaintiff's state law tort claims are barred by N.Y. Correction Law § 24(1), and those claims are dismissed without prejudice pursuant to N.Y. Correction Law § 24(2).

Defendants Kemp, Gonzalez, and Bosco are identified by plaintiff as employees of the

---

[10]  Plaintiff asserts claims for Intentional and Negligent Infliction of Emotional Distress, Assault, Battery, and False Imprisonment under New York common law.  *Id.*

New York State Office of Mental Health ("OMH"). Compl. at 7-8.[11] New York State Mental

Hygiene Law § 19.14 states in relevant part:

> (a) No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against an officer or employee of the office who is charged with the duty of securing the custody of a person in need of care and treatment for alcoholism in his personal capacity for damages arising out of any act done or the failure to perform any act within the scope of employment and in the discharge of official duties by such officer or employee.
>
> (b) Any claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties of such officer or employee shall be brought and maintained in the court of claims as a claim against the state.

N.Y. Mental Hyg. Law § 19.14. Therefore, to the extent plaintiff seeks monetary damages

from the OMH defendants in their personal capacities, plaintiff's state law tort claims against

them are barred by Mental Hyg. Law § 19.14(a), and those claims are dismissed without

prejudice pursuant to Mental Hyg. Law § 19.14(b).

### C.      Service of Process

Where a plaintiff has been authorized by the Court to proceed in forma pauperis

pursuant to 28 U.S.C. § 1915, the U.S. Marshals Service is appointed to effect service of

process of the summons and complaint on his behalf. *See* Fed. R. Civ. P. 4(c)(2) (U.S.

Marshal must be appointed to serve process when plaintiff is authorized to proceed in forma

pauperis); 28 U.S.C. § 1915(d) ("the officers of the court shall issue and serve all process and

perform all duties in [in forma pauperis] cases."). However, in this case, plaintiff's IFP

Application was denied pursuant to 28 U.S.C. § 1915(g). As a result, he is responsible for

serving the summons and complaint on the defendants.

---

[11]  Additionally, the Federal claims against defendants Kemp, Gonzalez, and Bosco have been dismissed without prejudice therefore the Court would in any event decline to exercise supplemental jurisdiction over the state law claims against them.

Rule 4(c) of the Federal Rules of Civil Procedure also provides that "[a]t the plaintiff's request, the court may order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court." Fed. R. Civ. P. 4(c)(3). Therefore, in order to advance the disposition of this action, and in light of the fact that plaintiff is incarcerated and proceeding pro se, plaintiff is advised that he may submit a motion requesting service by the United States Marshal on the following conditions. Plaintiff must (1) pay the service fee due to the U.S. Marshal in full **in advance** by money order or certified check[12] and (2) provide all necessary papers for service, including a completed U.S. Marshals Form (USM-285 Form) for each of the remaining thirty-three defendants, and thirty-three copies of the complaint. Plaintiff is directed to send the service documents and payment of the service fee to the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367, to be forwarded by the Clerk to the U.S. Marshal.

## IV.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the following claims survive sua sponte review and require a response: (1) the Eighth Amendment medical indifference claims against defendants Travers, Marlow, Lashway, Waterson, Fischer, Rock, Schroyer, Kornigsmann, Grinbergs, Smith, Rabideau, Otis, Bellnier, and Uhler; (2) the Eighth Amendment excessive force claims against defendants Patterson, Marshall, Lipka, Tuper, Whitford, Greenizen, Otis, Rock,

---

[12] Payment in cash or by personal check is not acceptable. For service by mail, the fee is $8.00 per summons and complaint. The cost of service by mail on the twenty defendants in this action is $264.00. Plaintiff is also advised that, if initial service is unsuccessful, he will be required to pay the U.S. Marshal any additional fee, also in advance, for subsequent service attempts according to the fee schedule set by the U.S. Marshal.

Zernia, Phillips, Grant, Dunning, Richter, and Sisto; (3) the Eighth Amendment conditions of confinement claims against defendants Williams, Bilow, Oropallo, and Greenizen; (4) the Eighth Amendment restricted diet claims against defendants Rock, Kornigsmann, Fischer, Prack, Bellnier, Schroyer, Otis, Lashway, Uhler, Travers, and Lira; and (5) the First Amendment retaliation claims against defendants Travers, Lashway, Wilson, Gokey, and Phillips; and it is further

ORDERED that all remaining claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted; and it is further[13]

ORDERED the Clerk shall issue summonses for defendants Travers, Marlow, Lashway, Waterson, Fischer, Rock, Schroyer, Kornigsmann, Grinbergs, Smith, Rabideau, Otis, Bellnier, Greenizen, Uhler, Patterson, Marshall, Lipka, Tuper, Whitford, Zernia, Grant, Dunning, Richter, Sisto, Williams, Bilow, Oropallo, Prack, Lira, Wilson, Gokey, and Phillips and forward them to plaintiff. It is plaintiff's responsibility to immediately serve the named defendants with a summons and a copy of his complaint in accordance with the Federal Rules of Civil Procedure. The Clerk shall forward a copy of the summons and complaint by mail to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

ORDERED that a response to the complaint be filed by the defendants Travers,

---

[13] Should plaintiff seek to pursue any of the claims dismissed without prejudice, he must file an amended complaint. Any amended complaint, which shall supersede and replace the original complaint in its entirety, must allege claims of misconduct or wrongdoing against each named defendant which plaintiff has a legal right to pursue, and over which jurisdiction may properly be exercised. Any amended complaint filed by plaintiff must also comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure.

Marlow, Lashway, Waterson, Fischer, Rock, Schroyer, Kornigsmann, Grinbergs, Smith, Rabideau, Otis, Bellnier, Greenizen, Uhler, Patterson, Marshall, Lipka, Tuper, Whitford, Zernia, Grant, Dunning, Richter, Sisto, Williams, Bilow, Oropallo, Prack, Lira, Wilson, Gokey, and Phillips, or their counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

ORDERED that Bell, Bellamy, Bosco, Cromp, Evans, Forbes, Garland, Gonzalez, Hungerford, Jarvis, Kemp, Laramay, Santamore, Tabb, White, Woodward, Isobella, Nason, Quinn, and Spinner are **DISMISSED without prejudice** as defendants to this action; and it is further

ORDERED that plaintiff may submit a motion requesting service of process by the U.S. Marshal in accordance with Federal Rule of Civil Procedure 4(c)(3) **to the limited extent set forth above**.  The Clerk shall send plaintiff thirty-three blank USM-285 Forms for his use should he choose to request such service.  As a courtesy, the Clerk shall also send plaintiff one copy of his complaint for his use in making additional copies;[14] and it is further

ORDERED that upon receipt from the Clerk of plaintiff's payment of the service fee and the documents required for service, the U.S. Marshal shall attempt to serve the summons and complaint upon the remaining defendants in accordance with Rule 4 of the Federal Rules of Civil Procedure; and it is further

ORDERED that, if plaintiff requests service by the U.S. Marshal, he must comply with any additional requests from the U.S. Marshal for documents that are necessary to effectuate service, and must provide payment in advance to the U.S. Marshal for any subsequent

---

[14]  Plaintiff may, if he so chooses, make copies of his complaint for service on double-sided paper.

service attempt if the original attempt to serve any defendant is unsuccessful; and it is further

ORDERED that all pleadings, motions and other documents relating to this action be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367.  Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action.  All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions.  All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court.  **Plaintiff is also required to promptly notify, in writing, the Clerk's Office and all parties or their counsel of any change in plaintiff's address; his failure to do so may result in the dismissal of this action**; and it is further

ORDERED that the Clerk serve a copy of this Decision and Order on plaintiff.

**IT IS SO ORDERED.**

Dated:  October 20, 2016
         Albany, NY

Mae A. D'Agostino
U.S. District Judge